## S99A1091. ADAMS v. THE STATE.

(521 SE2d 575)

CARLEY, Justice.

In connection with the homicide of Ricky Wyatt, the grand jury returned a multi-count joint indictment against Lashay Adams (Appellant), Paul Ray and Christopher Thompson. Thompson pled guilty to voluntary manslaughter, and he testified for the State at the joint trial of Appellant and Ray. The jury acquitted Ray, but found Appellant guilty of all offenses. The trial court entered judgments of conviction against Appellant and sentenced her only for malice murder, attempted armed robbery, and burglary.[1] Thompson subsequently withdrew his guilty plea, and a jury found him guilty of felony murder, burglary, and two firearm possession offenses. In *Thompson v. State*, 271 Ga. 105 (519 SE2d 434) (1999), however, we reversed certain of his convictions because of the insufficiency of the evidence of his participation in a burglary, as well as the trial court's erroneous recharge to the jury on the elements of the crime of burglary.

1. Construed most favorably to the State, the evidence shows that, after a visit to Wyatt's house, Appellant stated her intention to return and her desire to kill him. A few hours later, Appellant, Ray and Thompson made plans to rob Wyatt and traveled to his house in Ray's truck. Appellant entered the house alone and remained there with Wyatt's permission. Either Ray or Thompson then went to the house, and gunshots were fired. When all three returned to the truck, Appellant stated that Wyatt should not have hit her and that he got what he had coming. The victim was found lying in the doorway of his home, having died from wounds inflicted by a revolver later recovered from Ray's truck.

Appellant contends that there was no more evidence of her guilt of burglary than there was of Thompson's. *Thompson v. State*, supra at 107-108 (2). At her trial, however, she herself testified that, prior to the shooting, Ray entered Wyatt's house without authority. Thus, the evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Ray committed a burglary and that Appellant was a party to that crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Graham v. State*, 197 Ga. App. 102 (397 SE2d 600) (1990); *Coursey v. State*, 196 Ga. App. 135

---

[1] The crimes occurred on December 5, 1997. The grand jury returned its indictment on January 30, 1998. The jury found Appellant guilty on June 5, 1998 and, on June 9, 1998, the trial court entered the judgments of conviction and sentences. Appellant filed a motion for new trial on July 2, 1998, and amended it on September 23, 1998. The trial court denied the motion for new trial on March 5, 1999, and Appellant filed a notice of appeal on March 18, 1999. The case was docketed in this Court on April 22, 1999, and orally argued on June 21, 1999.

(1) (395 SE2d 574) (1990). As to the remaining offenses, "it was for the jury to assess the credibility of the witnesses, resolve any conflicts in the evidence, and come to a determination of the facts. [Cits.]" *Hodnett v. State*, 269 Ga. 115, 116 (1) (498 SE2d 737) (1998). A rational trier of fact could have found Appellant guilty beyond a reasonable doubt of malice murder and attempted armed robbery. *Jackson v. Virginia*, supra; *Hodnett v. State*, supra.

2. Appellant enumerates as error the trial court's denial of her pre-trial motion to sever her trial from Ray's and Thompson's. She argues that severance was necessary to avoid the prejudice which resulted from the introduction of the antagonistic pre-trial statements of her co-defendants and from the inadmissibility of their prior convictions to impeach their testimony at a joint trial.

The issue is moot insofar as Appellant's motion sought a severance of her trial from Thompson's, since he was ultimately tried separately. See *Pruitt v. State*, 217 Ga. App. 681, 683 (2) (458 SE2d 696) (1995). With regard to Ray, Appellant is unable to show any prejudice from the admission of his statement, because he gave testimony consistent with his statement and was subject to cross-examination by Appellant's counsel. *Kennedy v. State*, 253 Ga. 132, 134 (2) (317 SE2d 822) (1984). See also *Durham v. State*, 240 Ga. 203 (1) (240 SE2d 14) (1977).

> No prejudice amounting to a denial of appellant's due process protection is demonstrated by the circumstance that an accomplice, who is subject to cross-examination, takes the stand and blames the appellant or attributes to him a greater degree of culpability than the accomplice himself bears. [Cits.]

*Chandler v. State*, 213 Ga. App. 46, 47 (1) (443 SE2d 679) (1994). A trial court properly exercises its discretion when it refuses to grant a pre-trial severance motion on the ground of unsubstantiated assertions that a co-defendant is subject to impeachment by prior convictions. *James v. State*, 191 Ga. App. 723, 724 (382 SE2d 658) (1989). Moreover, Appellant does not contend that she would have used Ray's unrelated prior convictions for proving bias or any relevant purpose other than a mere general attack on his credibility. *Thomas v. State*, 199 Ga. App. 586, 590-591 (5) (405 SE2d 512) (1991). Accordingly, the trial court did not abuse its discretion in denying the motion to sever.

3. Appellant urges that the trial court erred in denying her motion for new trial, because the State violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) by failing to disclose Ray's prior criminal record.

It is undisputed that Appellant's counsel knew that both Ray and Thompson had lengthy criminal records, including felony convictions. Indeed, citing OCGA § 35-3-34, Appellant specifically requested those criminal history records of Ray and Thompson which are kept by the Georgia Crime Information Center (GCIC). Appellant cites no authority for the proposition that, other than by complying with OCGA § 35-3-34, the State has an obligation to disclose criminal records to a defendant. Appellant asserts, however, that the district attorney's files contained the reports on Ray's criminal history and that she relied on the prosecutor's statement that she had photocopied her entire file for each defendant. At the hearing on the motion for new trial, however, the prosecuting attorney testified that she informed Appellant's attorney that she was not allowed to provide the criminal histories of other defendants, but that he could obtain those records himself and that her file was open for his review. Thus, the trial court was authorized to find that the State's attorney did not mislead Appellant's defense counsel. Prior to trial, Appellant's lawyer did obtain a copy of the GCIC report, which indicated that Ray was a "multistate offender." The full GCIC report shows that a criminal history record was available from California, although Appellant's attorney denied knowing in which state Ray had a record. It is undisputed that the assistant district attorney made her entire files available for inspection by defense counsel.

There is a distinction between suppression of exculpatory evidence and a failure to disclose such evidence. "[W]e have indicated that the holding of the United States Supreme Court in Brady does not extend so far as to require the prosecution to turn over to the defense criminal records of state's witnesses. [Cit.]" *Carter v. State*, 252 Ga. 502, 506 (6) (315 SE2d 646) (1984). Here, Ray was not ever a witness for the State, but a co-defendant who chose to testify in his own defense. It is clear that Appellant knew of the existence of the criminal history and obtained the GCIC report herself pursuant to OCGA § 35-3-34 (a) (2). See *Bacon v. State*, 207 Ga. App. 39 (427 SE2d 32) (1993). Moreover, because that information appeared in the State's file and the prosecution had an "open file policy" in this case, Appellant had constructive knowledge of the existence of Ray's criminal history. *Lawson v. State*, 224 Ga. App. 645, 648 (3) (c) (481 SE2d 856) (1997). See also *Smith v. State*, 269 Ga. 72, 74 (3) (495 SE2d 280) (1998); *Crowe v. State*, 265 Ga. 582, 587 (7) (458 SE2d 799) (1995); *Wiley v. State*, 250 Ga. 343, 351 (5) (296 SE2d 714) (1982).

The record contains no indication that Appellant was *unable* to ascertain the details of Ray's out-of-state criminal history. The State itself did not possess copies of any California convictions. *Brady* " 'does not impose an affirmative obligation on the prosecution to seek out information for the defense, even if such information is more

accessible to the prosecution than to the defense.' " *Sears v. State*, 268 Ga. 759, 762 (3) (493 SE2d 180) (1997).

Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for new trial. See *Long v. State*, 237 Ga. 110, 111 (227 SE2d 22) (1976).

4. Appellant contends that the charge on burglary was erroneous for the same reasons as the recharge in *Thompson v. State*, supra at 107 (1). However, in this case, the trial court did not give the charge held to be error in *Thompson*. Instead, the trial court used only the language of the applicable statute and the suggested pattern jury instruction on burglary. See *Thompson v. State*, supra at 106, fn. 2; *Johnson v. State*, 207 Ga. App. 34, 36 (2) (a) (427 SE2d 29) (1993). We find no reversible error here.

5. Appellant complains that the jury found her guilty of felony murder without specifying which of three underlying felonies served as the predicate offense. "However, any issue concerning the felony murder count is moot, since the trial court entered a judgment of conviction and sentence only on the verdict finding [Appellant] guilty of malice murder. [Cit.]" *Boddy v. State*, 265 Ga. 498, 499 (4) (458 SE2d 630) (1995).

6. Appellant contends that the trial court erred in refusing to give a charge on voluntary manslaughter as a lesser included offense. She did not, however, make a written request for such a charge. *Brown v. State*, 269 Ga. 67, 69 (2) (495 SE2d 289) (1998). Moreover, when asked for exceptions to the charge, Appellant's counsel only made two objections which were unrelated to the omission of a charge on voluntary manslaughter, and made no reservation of further objections to the charge. Thus, we will not review this enumeration of error. *Bryant v. State*, 268 Ga. 33, 34 (1) (485 SE2d 763) (1997); *Lucas v. State*, 265 Ga. 514, 515 (2) (458 SE2d 103) (1995); *McGhee v. State*, 264 Ga. 193, 194 (3) (442 SE2d 757) (1994).

7. Appellant objected to the trial court's charge on conspiracy, on the ground that the State had not presented sufficient evidence to support the charge. The evidence showed that Appellant planned with Ray and Thompson to steal money and drugs from the victim, that she went to the victim's house first, and that she was present there when either Ray or Thompson arrived and the victim was murdered. See *Fetty v. State*, 268 Ga. 365, 371 (7) (489 SE2d 813) (1997); *Satterfield v. State*, 256 Ga. 593, 594 (1) (351 SE2d 625) (1987). Thus, the evidence authorized the trial court to charge on the law of conspiracy. See *Agnew v. State*, 267 Ga. 589, 591 (2) (481 SE2d 516) (1997).

*Judgments affirmed. All the Justices concur, except Benham, C. J., who concurs in Divisions 1, 2, 3, 5, 6 and 7 and in the judgment.*

Decided September 20, 1999.

*Stephen F. Lanier,* for appellant.
*Tambra P. Colston, District Attorney, Martha P. Jacobs, Assistant District Attorney, Thurbert E. Baker, Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.