## A02A0265. WOODS v. THE STATE.
### (564 SE2d 853)

MILLER, Judge.

Derrick Woods was convicted of voluntary manslaughter based on evidence, supplied in part by his co-defendant, that Woods shot

---

and killed a rival drug dealer. On appeal he claims three errors: (1) the court should have severed his co-defendant's trial; (2) the court should have allowed him to cross-examine the co-defendant on a pending (though dead-docketed) drug charge; and (3) the court should have excluded out-of-court statements made by the State's primary eyewitness. We affirm, holding: (1) the court did not abuse its discretion in not severing the trials, as Woods had the opportunity to cross-examine the co-defendant; (2) the alleged bias to be shown by the pending drug charge — namely that the co-defendant was testifying to curry the favor of the prosecution so as to avoid that charge — is nonsensical in light of the prosecution vigorously pursuing a *murder* charge against this same co-defendant in this very case in which he was testifying; and (3) the out-of-court statements were admissible as prior consistent statements and as part of the res gestae.

The eyewitness testified that without provocation, Woods and the co-defendant began shooting toward him and the victim as they were sitting on a porch. Two bullets struck the victim, who soon died. Within minutes of the shooting, the hysterical eyewitness told a local resident and police of this event and of the identity of the perpetrators. The co-defendant approached police the next day and admitted to being present at the scene, but claimed that only Woods fired a gun.

Both men were jointly indicted for murder, felony murder, and aggravated assault. The court denied their requests to sever the trials. At trial the co-defendant announced he intended to testify as part of his defense, and Woods again moved to sever, which was denied. Repeated motions to sever were denied throughout the trial. Following the State's case, the co-defendant testified in his own defense, identifying Woods as the sole shooter and as acting without provocation. Woods also testified, describing this as a "drug turf" dispute and admitting he fired his gun but claiming self-defense. The jury acquitted the co-defendant on all counts but found Woods guilty of a lesser included charge of voluntary manslaughter and of aggravated assault and reckless conduct (which latter two counts the court merged into the manslaughter conviction). He appeals.

1. Woods contends that the court erred in not severing the trials. "The question of whether to grant a severance in a joint trial for a capital crime in which the death penalty is not sought is within the discretion of the trial court." *Green v. State*, 274 Ga. 686, 687 (2) (558 SE2d 707) (2002); see OCGA § 17-8-4. The trial court considers three factors: (1) whether the number of defendants will confuse the jury regarding the evidence and law applicable to each defendant; (2) whether there is a danger that evidence admissible against one defendant will be improperly considered against another defendant (despite cautionary instructions); and (3) whether the defenses of the

defendants are antagonistic to each other or to each other's due process rights. *Green*, supra, 274 Ga. at 687-688 (2); see *Adams v. State*, 264 Ga. 71, 73 (3) (440 SE2d 639) (1994).

Woods does not argue that the first two factors weigh in favor of severance, but only the third. Absent a showing of harm, however, the mere existence of antagonistic defenses between two co-defendants will not require severance. *Graham v. State*, 266 Ga. 543, 544 (5) (468 SE2d 363) (1996). Woods points out that not only did the co-defendant provide crucial evidence that Woods as the shooter was unprovoked, but since the co-defendant was also on trial, Woods was harmed in that he was prohibited from using the co-defendant's prior drug conviction to impeach his testimony. See OCGA § 24-9-20 (b).

The co-defendant's testimony did not require a separate trial. "No prejudice amounting to a denial of appellant's due process protection is demonstrated by the circumstance that an accomplice, who is subject to cross-examination, takes the stand and blames the appellant or attributes to him a greater degree of culpability than the accomplice himself bears." *Adams v. State*, 271 Ga. 485, 486 (2) (521 SE2d 575) (1999), quoting *Chandler v. State*, 213 Ga. App. 46, 47 (1) (443 SE2d 679) (1994). This testimony would have been admissible even if Woods had been tried separately. *Green*, supra, 274 Ga. at 688 (2).

Nor did Woods carry his burden in clearly showing that he was prejudiced by his inability to impeach the co-defendant by use of a prior drug conviction. Beyond the fact that Woods failed to describe the conviction in detail and to proffer certified copies thereof, Woods only contends that he would have used the co-defendant's prior conviction as a mere general attack on his credibility, which is insufficient to show clear prejudice. *Adams*, supra, 271 Ga. at 486 (2). Woods's citation to *Morris v. State*, 204 Ga. App. 437 (1) (419 SE2d 733) (1992), is misguided, for in that case the "co-defendants were called as *witnesses for the State*." (Emphasis in original.) Id. at 437 (1). *York v. State*, 242 Ga. App. 281, 287 (3) (a) (ii) (528 SE2d 823) (2000), distinguished *Morris* on this very ground.

Since evidence supported a finding that Woods did not carry his burden of showing clear prejudice, we will not overturn the trial court's denial of severance. See *Green*, supra, 274 Ga. at 688 (2).

2. Woods argues that the court erred in precluding him from cross-examining the co-defendant on a pending drug charge that had been dead docketed. Citing *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982), Woods urges that he wanted to show that the co-defendant was shading his testimony in favor of the prosecution in an effort to please the prosecution so as to keep the drug charge dead docketed. This reasoning, however, makes no sense, for the prosecution was vigorously prosecuting the co-defendant for murder, felony

murder, and aggravated assault in this very case in which the allegedly "shaded" testimony was being given. The court had ample grounds for finding that discussion of the pending "dead-docketed" drug charge would have had no impact on the credibility of the codefendant's testimony and would only have confused the jury or have prejudiced the co-defendant in his defense. We hold that the trial court did not abuse its discretion in restricting this portion of cross-examination. See *Roberson v. State*, 246 Ga. App. 534, 539 (3) (540 SE2d 688) (2000).

3. Woods contends that the trial court erred in admitting two out-of-court statements made by the State's eyewitness: one to a resident at the scene while awaiting the arrival of police, and one to an officer at the scene. During the 20 minutes before police arrived, the hysterical eyewitness told the resident that Woods and the co-defendant had shot the dying victim. Soon after police arrived, the eyewitness, who was still upset, told an officer that two men had fired on them without provocation. Finding the statements were either res gestae or prior consistent statements, the trial court allowed them in.

The trial court did not abuse its discretion. "[P]rior consistent statements are admissible . . . where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." (Punctuation omitted.) *Armour v. State*, 247 Ga. App. 592, 593 (2) (544 SE2d 516) (2001), quoting *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998). Here, before the statements were introduced, both defendants cross-examined and challenged the veracity of the eyewitness at trial. Moreover, the statements, which were made within minutes of the violent incident and while the eyewitness was still upset, were also admissible as part of the res gestae. See OCGA § 24-3-3; *Espy v. State*, 246 Ga. App. 1, 2 (2) (539 SE2d 513) (2000); *Perkins v. State*, 226 Ga. App. 613, 614 (1) (a) (487 SE2d 365) (1997).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED MAY 6, 2002.

*Culp & Smith, John C. Culp*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.